UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS S. ANDRADE, | ) | 1:09-cv-1926 GSA |
| Plaintiff, | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| v. | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Thomas S. Andrade ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8 & 9.)

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for disability and supplemental security income benefits on October 24, 2008, alleging disability as of December 28, 2006.  AR 126-132.  His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 88-97.  ALJ Michael J. Kopicki held a hearing on July 22, 2009, and issued an order regarding benefits on August 19, 2009, finding Plaintiff was not disabled.  AR 8-18, 21-63.  Thereafter, on October 2, 2009, the Appeals Council denied review.  AR 1-3.

**Hearing Testimony**

On July 22, 2009, ALJ Kopicki held a hearing in Fresno, California.  AR 21-63, 104-108. Plaintiff appeared and testified.  He was represented by attorney Melissa Proudian.  Vocational Expert ("VE") Thomas Dachelet also appeared and testified.  AR 21-63.

On the date of the hearing, Plaintiff was unable to provide his current address because he had recently moved in with his mother-in-law.  AR 25.  Along with his seventy-five year old retired mother-in-law, his wife also resides in the condominium.  AR 25-26.  Plaintiff's wife previously operated a day care business out of their home, however, they no longer have either the business or the home.  AR 26.  Plaintiff and his wife are not currently receiving any government assistance, although he indicated he intended to apply for such assistance.  AR 26-27.

Plaintiff has two children with his wife and a stepson.  His oldest child is twenty-three years old and the younger child is twenty-one years old.  His stepson is thirty-five years old. None of the children reside in the home with he and his wife.  AR 29.

Plaintiff was born April 23, 1962, and was forty-seven years old on the date of the hearing.  AR 27.  At five feet six inches tall, Plaintiff weighs about 204 pounds.  He is right

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

handed. AR 28. With regard to education, he indicated the last grade he actually passed was sixth grade, and that he quit attending school in the eighth grade. At the time he stopped attending school, Plaintiff was in special education classes. AR 27-28. He has never received vocational training and has not served in the military. AR 28.

Prior to becoming injured, Plaintiff worked for seventeen years as an asphalt laborer. AR 46. Depending upon the job, the pay ranged from $18 to $28 per hour, and often involved working overtime. He was a member of a union at that time. AR 46-48.

With the exception of a six-week period in 2007 wherein Plaintiff attempted to return to the work force, he has not worked since the onset of disability on December 28, 2006. AR 29-30. Plaintiff can no longer work because of the burning sensation in his left hand. The burning and throbbing travels from the tips of his fingers, up his shoulder, to his neck and across the backside of his neck. AR 30-31; *see also* AR 33-34. The pain is constant. AR 31. It worsens if he holds something like a coffee cup with his left hand. AR 31. When he was asked whether he was receiving treatment for the condition, Plaintiff replied he was not. When he was asked whether he was taking pain medication, Plaintiff replied that he was and indicated he takes Lyrica.[3] AR 31. The ALJ then asked, "[b]ecause of your Hep C?" and Plaintiff replied in the affirmative. AR 31. Plaintiff indicated that Lyrica helps but it makes him fall asleep. AR 31.

Plaintiff underwent surgery on his neck but it did not help his condition in any way. AR 31-32. In his words, "they just did the surgery and they didn't take the, the starting problem away" in his left arm. AR 32. Following the surgery, Plaintiff was told to return to work despite his continued complaints of pain. AR 32. Plaintiff's primary physician moved away, and therefore he had to find another physician. The new physician sent him to other doctors for additional testing. AR 32-33. One doctor advised Plaintiff he did have nerve damage or carpal tunnel syndrome, but another doctor said he did not. AR 33, 42. Similarly, one doctor advised

---

[3]"LYRICA is indicated to treat Diabetic Nerve Pain, Pain after Shingles, and Fibromyalgia. LYRICA is also indicated to treat Partial Onset Seizures in adults with epilepsy who take 1 or more drugs for seizures." http://www.lyrica.com.

Plaintiff he needed surgery on his left hand, whereas another doctor told him he did not need surgery. AR 42. In any event, he has not had surgery on his left hand. AR 42.

Despite the Hepatitis C condition, Plaintiff does not have any problems related thereto, nor did he identify any other problem. It was "just [his] left arm." AR 33.

When asked to describe a typical day, Plaintiff indicated he gets up about 6:00 a.m. He does not need any assistance showering or bathing, or washing his hair. His wife fixes him breakfast and coffee. AR 34. Because he takes medication three times a day - at 8:00 a.m., 1:00 p.m. and 6:00 p.m. - he gets drowsy and has to lie down and rest during the day. AR 42-43. Plaintiff explained that about forty-five minutes to an hour after he takes the medication he gets drowsy. Then he will go lie down for about thirty minutes, before sitting up and watching television. AR 43.

Plaintiff does not cook or clean, nor does he do the laundry. AR 34. Before he was injured, Plaintiff would help his wife with these chores "once in awhile." AR 35. He does not take care of the yard or fix things around the house because he can no longer do so. AR 35. Plaintiff used to restore classic cars as a hobby. It has been about two years since he last enjoyed his hobby; he had to stop because he could not hold onto anything with his left hand. AR 35. Plaintiff does not attend church or socialize outside the home. AR 35-36.

Plaintiff does drive, but "very little." For instance, he will drive a half mile to the grocery store. AR 34. On the date of the proceedings, his wife drove him to the hearing in his stepson's car. AR 34. When Plaintiff does drive, he does not go into the grocery store, rather, he stays in the car. AR 36.

When asked how far he believed he could walk, Plaintiff indicated "[p]robably about a block." AR 36. This is so because he begins to get dizzy and shakes. He does not know why. AR 36-37. Despite explaining to his doctor that walking makes him dizzy and causes him to shake, Plaintiff indicated the doctor told him to "just keep working little by little." AR 37. He believes the dizziness and shaking is caused by the medication. AR 37. When specifically asked

to describe the dizziness, Plaintiff indicated that it was "like you get blurry a little bit." AR 37. He attributes the blurriness to nervousness because walking a block makes him nervous. AR 38.

With regard to the period of time he is able to stand, Plaintiff replied "[n]ot very long" or "20 minutes probably." AR 38. The difficulty is not with his legs; rather, his lower back will begin to hurt if he stands too long. AR 38. Plaintiff can sit for about ten minutes before he has "to turn" and can sit for a total of about twenty to thirty minutes before needing to lie down due to the back pain. AR 39.

Plaintiff initially indicated he could lift no weight with his hands, then indicated he could probably pick up twenty pounds with his right hand. AR 39. With specific regard to his left hand, Plaintiff indicated he could "barely pick [up] but maybe five" pounds. AR 40. He could hold onto that five pounds for about three minutes. AR 44. Plaintiff does not know how much weight he could lift if he were to use both hands, but estimated he could then carry it "about 20 feet probably." AR 40. Additionally, Plaintiff is unable to turn or twist his left hand because "it burns." AR 44. He is unable to grip anything with his left hand. In comparison, his right hand is much stronger. AR 45.

Reaching overhead with his left hand is not possible for Plaintiff. He cannot reach out in front of himself at shoulder height with the left arm either because his arm will begin to burn. AR 40. Plaintiff estimated he could use his left arm for about five minutes before it began to burn and throb. Thereafter, he has to stop and he "can't use it no more." AR 40-41. He cannot use the index finger and thumb on his left hand to pick something up off of a table because his hand will throb and his fingertips will burn. AR 44.

Plaintiff cannot read and he cannot write. If someone called the house for his wife, for example, he is unable to leave a written message for her. AR 41. He can write his name. AR 45. When he was asked whether he could read street signs, Plaintiff indicated that if he sits and studies them for "awhile" he can do so. AR 41-42. When Plaintiff was asked how he obtained his driver's license if he was unable to read, he indicated that his wife helped him study and he

was able to take the test orally. AR 45. Plaintiff's wife handles the household bills and writes the checks. AR 51.

When asked whether he had any difficulty concentrating or focusing his attention, Plaintiff indicated that focusing is a "little problem" because focusing is "[j]ust blurry." AR 43. About twenty minutes is the most he would be able to keep his attention on an activity. AR 43. After twenty minutes his "back starts hurting" and he will lie down. He would "do nothing after that." AR 43. A rest period of about thirty minutes would be necessary before he could resume focus for another twenty minutes. AR 44.

VE Dachelet opined that Plaintiff could not perform his past relevant work as an asphalt laborer or raker because it is considered to be very heavy, unskilled work. AR 46.

The VE was asked to consider several hypothetical questions posed by the ALJ. First, VE Dachelet was asked to assume a hypothetical worker of Plaintiff's age, education, and work experience who can lift and carry twenty pounds occasionally and ten pounds frequently, can stand or walk six hours in an eight-hour day, and sit for six hours in an eight-hour day. The worker should avoid climbing ladders, ropes or scaffolds, and overhead activity with the left upper extremity is limited to occasional, as is frequent handling and fingering on the left. Lastly, such a worker is limited to simple, routine work. AR 48-49. VE Dachelet indicated such an individual could not perform Plaintiff's past relevant work. AR 49. Nevertheless, such a worker could perform sedentary and light unskilled work. Examples would include the following positions: bagger, Dictionary of Occupational Titles ("DOT") 920.687-08, with 30,369 jobs available in California; garment sorter, DOT 222.687-014, with 32,499 jobs available in California; and grader, DOT 529.665-010, with 19,918 jobs available in California. AR 29. National figures are obtained by multiplying the state number by ten. AR 49-50. VE Dachelet indicated his testimony is consistent with the DOT. AR 50.

In a second hypothetical, VE Dachelet was asked to consider the same worker and an identical scenario to the first hypothetical, with an additional limitation to occasional (rather than

frequent) handling and fingering with the non-dominant left upper extremity. AR 50. The VE indicated that with the additional limitation, only the garment sorter position would be available to such a worker. The bagger and grader positions would be unavailable. AR 52. As a general matter, the VE indicated that at both the light and sedentary levels, when frequent fingering is prohibited, approximately two-thirds of the available positions "disappear" or are unavailable. AR 52-53.

In a third hypothetical question, the VE was asked to consider the same worker, with the following abilities and/or limitations: can lift twenty pounds with the right hand but only five pounds with the left hand; can carry either weight no more than twenty feet; can stand for twenty minutes at a time, sit for twenty minutes at a time, and walk for about a block; must avoid handling or fingering with the left hand; and perform simple repetitive work. AR 56-57. VE Dachelet indicated that such an individual could not perform any work. AR 57.

Attorney Proudian also posed a hypothetical to the VE. She asked him to consider the same "elements" as the second hypothetical posed by the ALJ, but asked that VE Dachelet consider "the addition non-exertional need for rest breaks" in addition to those normally provided, "of at least one to two hours due to side effects of medication and [a] need to [lie] down." AR 57. The VE indicated the world of work would be closed to such an individual. AR 57.

**Medical Record**

The entire medical record was reviewed by the Court (AR 202-566), however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

**ALJ's Findings**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 28, 2006, and had the severe impairments of cervical disc disease with history of

surgery, and borderline intellectual functioning. AR 10. Nonetheless, the ALJ determined that none of the severe impairments met or exceeded one of the listing impairments. AR 11-12.

Based on his review of the medical evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary or light unskilled level work. AR 12-17. The ALJ found that Plaintiff could not perform his past relevant work. AR 17. He determined that Plaintiff is a younger individual, with a marginal education, whom is able to communicate in English. AR 17. Based on his age, vocational background and RFC, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy. Thus, the ALJ determined Plaintiff was not disabled. AR 17-18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity December 28, 2006; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 C.F.R. §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform his past relevant work; yet (5) in light of his age, education and background, the ALJ determined that Plaintiff had the RFC to perform jobs that exist in significant numbers in the national economy. AR 12-18.

On appeal, Plaintiff argues that the ALJ violated his duty to fully and fairly develop the record by accepting an incomplete psychological examination, and asserts the ALJ failed to provide legally sufficient reasons to reject the medical evidence as well as his own testimony.

# DISCUSSION

*The ALJ's Duty to Develop the Record*

Plaintiff complains that ALJ Kopicki erred by failing to fully and fairly develop the record with regard to the "deficient and incomplete psychological examination of Dr. McDonald." (Doc. 13 at 10.) Defendant counters that the absence of a complete test as characterized by Plaintiff is not error, and that the responsibility for deciding whether to perform certain tests rests with the medical source. Additionally, Defendant argues that Plaintiff's allegations are lacking legal support and are merely speculative. (Doc. 18 at 5.)

### 1.     The Applicable Legal Standard

In general, it is the duty of the claimant to prove to the ALJ that he is disabled. 20 C.F.R. § 404.1512(a). To this end, he must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on his ability to work. *Id.* For his part the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e) & 404.1527(c)(3); *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001). When the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.*

However, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v.*

*Halter*, 242 F.3d at 1150.  When the ALJ finds support in the record adequate to make a determination regarding the claimant's disability, he does not have a duty to contact the doctors. *Bayliss, v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 2. The Relevant Medical Record

Licensed psychologist Mary K. McDonald performed a psychological evaluation of Plaintiff on November 18, 2008.  AR 310-317.  Dr. McDonald noted Plaintiff's mental status as follows: "Thomas' speech was clear and coherent.  He was oriented to person, place and time knowing the current and past presidents, the year, month, day of month, day of week and town he was in.  He is able to tell time.  He is not impaired in the activities of daily living.  He can cook, bathe, dress and do simple housework. He does not shop and his wife reminds him of appointments." AR 311.

Dr. McDonald administered the following tests: Trails A & B, Bender Visual Motor Gestalt Test, II edition, Wechsler Adult Intelligence Scale, III edition, and Wechsler Memory Scale, III edition. AR 311.  With regard to the Trails A & B testing, Plaintiff obtained scores in the mild to moderate range.  AR 311.  On the Bender Visual Motor Gestalt exam, Plaintiff's scores were higher.  AR 311-312.  Dr. McDonald's report indicates that only the Performance IQ portion of the Wechsler Adult Intelligence Scale was administered "due to the constraints of time." AR 312.  Plaintiff's Performance IQ score was a 72 and placed him within the borderline range of intelligence.  AR 312.  Lastly, with regard to the Wechsler Memory Scale, Plaintiff's memory was noted to be significantly impaired.  AR 312.

The doctor's diagnosis at Axis II was borderline intellectual functioning.  AR 312.  Dr. McDonald's report recommends as follows:

> The granting of disability benefits would depend upon the diagnosis of physical disabilities.  He appears capable of recalling simple instructions, working with staff and supervisors and understanding the need to be on time, to pay attention to safety instructions and to interact appropriately with the public.  If benefits are granted, he appears capable of handling them in his own best interest.

AR 312-313.

11

1   State agency physician Richard C. Kasper prepared a Psychiatric Review Technique on
2  November 30, 2008, wherein he determined Plaintiff's borderline intellectual functioning was a
3  medically determinable impairment that did not satisfy the Listing criteria for organic mental
4  disorders. AR 324. With regard to rating the "B" criteria of Listing 12.02, Dr. Kasper
5  determined Plaintiff was mildly limited as follows: restriction of activities of daily living;
6  difficulties in maintaining social functioning; and difficulties in maintaining concentration,
7  persistence or pace. There were no episodes of decompensation. AR 333. There was no
8  evidence of "C" criteria. AR 334. Dr. Kasper found Plaintiff's mental impairment was not
9  severe. AR 323.

The record also includes a letter dated July 16, 1993, from Len Hacker, a senior rehabilitation counselor with the California Department of Rehabilitation's Visalia office. The letter is addressed to the Jury Commissioner in Tulare County and indicates that Plaintiff "has been diagnosed as having a permanent, specific Learning Disability in reading, writing, and math." AR 308.

### 3. ALJ Kopicki's Findings

Here, the ALJ's findings state as follows:

> Dr. Mary K. McDonald, Ph.D. performed a consultative psychological examination of the claimant on November 18, 2008. Dr. McDonald said that the claimant identified himself with an expired California driver's license, having driven himself to the examination. He said he had been off work 2 years and had undergone a spinal fusion surgery. Dr. McDonald administered several tests, including IQ and memory. She said the claimant had significant impairment in cognition and memory. His performance was very consistent on all of the tests. The claimant said he did not have any psychiatric difficulties. The doctor gave a DSM IV diagnosis of Axis II Borderline Intellectual Functioning. He appears capable of recalling simple instructions, working with staff and supervisors and understanding the need to be on time, to pay attention to safety instructions and to interact appropriately with the public. He appears capable of handling his own funds (Exhibit 10F).

AR 15. Later, the ALJ noted the following:

> I give substantial weight to the opinion of the consultative psychologist. *She appears to have performed a careful examination along with all the necessary testing.* She indicates that the claimant does not claim any psychiatric problem, but the testing does show BIF. This is confirmed by the State Department of

12

Rehabilitation senior counselor. While he is not a medical professional, he does have experience in the rehabilitation of workers, his opinion is in accord with the medical testing and evidence, and is of some assistance. The consultative psychologist did say the claimant can do simple repetitive work.

AR 16, emphasis added.

### 4.     Analysis

First, it is important to note that Plaintiff was represented by attorney Melissa Proudian at the administrative hearing. Prior to commencement of the testimony taken on the date of the hearing, Ms. Proudian was advised by ALJ Kopicki about the content of the medical record upon which he would rely. More specifically, the ALJ referenced Dr. McDonald's report as Exhibit 10F. Ms. Proudian had no objection to Dr. McDonald's report. *See* AR 24-25. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Marathon Oil Co. v. United States*, 807 F.2d 759, 767 (9th Cir. 1986) (stating that, "[a]s a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time"); *see also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (finding waiver due to failure to raise issue at hearing before ALJ, as opposed to the Appeals Council).[4]

Nevertheless, there is no reason to believe that Dr. McDonald's report, including only the Performance IQ scale versus all three IQ scores, amounted to an inadequate record. The report allowed for a proper evaluation of the evidence, and thus ALJ Kopicki had no duty to develop the

---

[4] In *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), the Supreme Court held that a Social Security claimant's failure to present an issue to the Appeals Council does not waive judicial review of that issue but specifically deferred ruling on whether a claimant must exhaust issues before the ALJ prior to seeking judicial review. *See id*. at 107, 112. The First Circuit explained in *Mills* that "[t]he impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process." *Mills*, 244 F.3d at 8.

13

record further. *Tonapetyan v. Halter*, 242 F.3d at 1150. Given this record, the ALJ had sufficient information upon which to make a determination. *Bayliss v. Barnhart*, 427 F.3d at 1217.

Plaintiff asserts the "regulations mandate that a psychological examination should last at least 60 minutes with a provision for additional time based on the type of testing performed." (Doc. 13 at 11.) Plaintiff reasons that because Dr. McDonald "performed only one third of the Wechsler Adult Intelligence Scale IQ test . . . 'due to the constraints of time' . . ." the result was an "incomplete examination report." (Doc. 13 at 12.) Plaintiff further reasons that Dr. McDonald's failure to obtain a verbal IQ is not in accord with the applicable Code of Federal Regulations sections, and in light of Plaintiff's middle school education and prior employment "of simple very heavy laborer work," the ALJ's failure to fully develop the record by re-contacting Dr. McDonald is error. (Doc. 13 at 12-13.)

Significantly, Dr. McDonald's report does not reflect the length, or brevity for that matter, of her examination of Plaintiff. AR 310-317. Thus, it is pure speculation for Plaintiff to assert here that "[i]t appears that the only time constraint was Dr. McDonald . . . imposing a maximum appointment time." (Doc. 13 at 12, n. 1.) Plaintiff's reliance on an exhibit appended to his opening brief does little to support his argument. For example, following a review of the exhibit, the Court notes that the participants in the study had an average education beyond the twelfth grade. (Doc. 13-1 at 3-4.) Here however, Plaintiff testified that the last grade he passed was the sixth grade, and that he remained in school until sometime in the eighth grade, albeit in special education classes. AR 27-28. In sum, the record evidence is more than sufficient to allow the ALJ to conclude that Plaintiff's borderline intellectual functioning does not preclude him from work.

Moreover, Plaintiff did not explain how, had Dr. McDonald completed the IQ testing to his satisfaction, such a finding would affect the ALJ's finding that Plaintiff was capable of sedentary or light, unskilled work with a restriction to simple, repetitive work. (Doc. 13 at 10-

14

14.) The Court finds that while Plaintiff cannot perform his past relevant work, as it involved heavy labor, the work identified by the ALJ as available to Plaintiff remains unchanged as to skill level, to wit: unskilled. Pursuant to the regulations, unskilled work is work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

In sum, ALJ Kopicki did not err by failing to develop the record by re-contacting Dr. McDonald. Moreover, the ALJ's findings are supported by substantial evidence.

***Subjective Pain Testimony***

Next, Plaintiff argues[5] the ALJ erred by improperly assessing his pain testimony. More particularly, Plaintiff asserts the ALJ failed at the second step of his evaluation of Plaintiff's pain symptoms. (Doc. 13 at 15-17.)

### 1.    The Applicable Legal Standard

The ALJ is required to make specific findings assessing the credibility of Plaintiff's subjective complaints. *Ceguerra v. Secretary of HHS,* 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988)).

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order

---

[5] Plaintiff's argument begins as follows: "Thomas Andrade has never contended that she is a quadriplegic dependent upon others for survival and unable to perform any activities." (Doc. 13 at 15.) Clearly this is a typographical error as Plaintiff is neither female nor quadriplegic. A number of typographical errors regarding gender were noted by the Court. Careful proofreading of work product is expected.

15

to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)). The findings must convincingly justify the ALJ's rejection of the Plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Once a claimant produces medical evidence of an underlying impairment likely to cause the alleged pain, the ALJ may not discredit the allegations of the severity of the pain solely because the evidence does not support plaintiff's statements. *Lester*, 81 F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*)). In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit reaffirmed that the ALJ must provide "specific, cogent reasons for the disbelief." Internal citations & quotation marks omitted. The appellate court stated that "[f]actors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Id.*, internal citations & quotation marks omitted.

### 2. The ALJ's Subjective Pain Complaint Findings

ALJ Kopicki found as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
> The claimant's testimony is not consistent with the statements made in the documents filed by him and his wife. In the documents, the statement is made that he can walk 5 miles before he has to stop and rest. His testimony was that he starts shaking and gets dizzy shortly after starting to walk. I agree with the statement made by the State agency medical consultants that the claimant's complaints are credible to a certain extent, but certainly not to the level of severity precluding all forms of work. The claimant's reports of chronic left hand burning and throbbing with inability to grip are no[]t supported by the evidence of record.

|   |   |
|---|---|
| 1 | As noted, the electro-diagnostic tests of record are negative and grip strength was measured at 5/5 by Dr. Murphy (Exhibit 14F and 17F). |
| 2 |   |
| 3 | AR 15-16. |
| 4 | **3.     Analysis** |
| 5 | In this case, the ALJ did not ignore or reject Plaintiff's testimony solely because it was |
| 6 | unsupported by objective evidence.  The ALJ also made other findings in support of his |
| 7 | determination that Plaintiff's complaints of pain were exaggerated.  Specifically, the ALJ |
| 8 | identified inconsistencies in Plaintiff's testimony about his ability to walk and answers provided |
| 9 | on the forms Plaintiff and his wife completed pursuant to his application for benefits.  This is a |
| 10 | legitimate credibility consideration and also goes to Plaintiff's reputation for truthfulness.  *See* |
| 11 | *Orn v. Astrue*, 495 F.3d at 635; *see also Lester v. Chater*, 81 F.3d at 834.  Therefore, ALJ |
| 12 | Kopicki did not discredit Plaintiff's allegations of the severity of his pain solely because the |
| 13 | evidence does not support Plaintiff's statements.  *Lester*, 81 F.3d at 834. |
| 14 | The ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec.* |
| 15 | *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the |
| 16 | evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  As explained above, ALJ Kopicki |
| 17 | did nothing less in this case. |
| 18 | ***Lay Witness Testimony*** |
| 19 | Plaintiff also argues the ALJ deficiently evaluated third party evidence in the form of |
| 20 | Plaintiff's wife's statement.  (Doc. 13 at 20-21.)  Defendant contends that because Plaintiff's |
| 21 | wife's statement is based on Plaintiff's own assertions, the ALJ did not err.  (Doc. 18 at 8-9.) |
| 22 | **1.     Applicable Legal Standard** |
| 23 | Lay witness testimony as to a claimant's symptoms is competent evidence which the |
| 24 | Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The |
| 25 | ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that |
| 26 | are germane to each witness."  *Id.*  The ALJ need not discuss lay witness testimony that pertains |
| 27 |   |
| 28 | 17 |

to whether or not an impairment exists. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). These medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence. 20 C.F.R. § 404.1513(a). However, once an impairment has been established by medical evidence, the extent of the diagnosed impairment may be testified to by the lay witnesses. 20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

### 2. ALJ Kopicki's Consideration of the Lay Testimony

At page fourteen of the Administrative Record, a function report that was to be completed by Plaintiff is considered, as was the third party function report prepared by Plaintiff's wife:

> In his function report, filled out by his wife, the claimant said that he watches television from 10:00 AM to 2:00 PM. He picks his nephew up from school at 2:00 P M. He then watches television until he goes to bed at 11:00 PM. He has no problem with personal care, such as dressing, bathing, caring for his hair, shaving, feeding himself and using the toilet. He does not need reminders about such things, and does not need to be reminded to take his medication. When he goes out, he travels by car, driving himself. He can go out alone. He goes shopping in stores, shopping for groceries with his wife, he is able to pay bills and count change. His ability to handle money has not changed since his illness began. He spends time with others, including his family and his brothers once a month. He does not need to be reminded to go places. He has no problem getting along with family, friends, neighbors or others. He can walk 5 miles before needing to rest. When asked the question: "If you have to rest, how long before you[] can resume walking?" he indicated: "N/A." He finishes what he starts, such as a conversation, chores, watching a movie. He follows spoken directions very well. He gets along very well with authority figures, such as police, bosses, landlords or teachers. He has never been fired or laid off from a job because of problems getting along with other people. He handles stress well, and also handles changes in routine well. He has not noticed any unusual behavior or fears (Exhibit 4E). The third party function report, also completed by his wife, has similar answers (Exhibit 5E).

AR 14.

### 3. Analysis

The Court has reviewed both Exhibits 4F and 5F in the administrative record. *See* AR 150-165. Whereas the ALJ concluded both function reports proffered "similar answers," the Court concludes the two documents are almost completely identical. *Cf.* AR 150-157 to AR 158-165. It is plain that Plaintiff's wife, Rosemary Andrade, is merely parroting her husband's

complaints, rather than offering an independent assessment of his ability from her perspective. In this regard, ALJ Kopicki provided a germane reason for disregarding Mrs. Andrade's statements - Mrs. Andrade's statements are clearly based on Plaintiff's own assertions. *Dodrill v. Shalala*, 12 F.3d at 919. The Court finds that the magical words, "I reject the lay witness's testimony because . . ." are not required, particularly here were it is obvious the ALJ found Mrs. Andrade's statements to merely echo those attributed to her husband. *See, e.g.*, *Casey v. Astrue*, 2010 WL 1381658 (D. Ariz. March 31, 2010).

Assuming arguendo the Court found the ALJ had erred by not providing a germane reason for disregarding Plaintiff's wife's third party statements, reversal is not required here. The Ninth Circuit has held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006). This Court finds that even if ALJ Kopicki had erred in failing to fully credit Mrs. Andrade's testimony, any such error is harmless. In light of the record below, no reasonable ALJ would have reached a different disability determination.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Thomas S. Andrade.

IT IS SO ORDERED.

Dated:   **March 9, 2011**              /s/ **Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE